

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2004

# Caruso v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2709

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Caruso v. Comm Social Security" (2004). *2004 Decisions.* Paper 690.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/690

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-2709

———————

DEBORAH CARUSO,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 00-cv-06184
District Judge:  The Honorable Joseph A. Greenaway, Jr.

———————

Submitted Under Third Circuit LAR 34.1(a)
February 23, 2004

———————

Before: RENDELL, BARRY, and ROSENN, <u>Circuit Judges</u>

———————

(Opinion Filed: May 19, 2004)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

        Deborah Caruso ("Caruso") appeals the decision of the United States District

Court for the District of New Jersey affirming the decision of the Commissioner of the

Social Security Administration ("Commissioner") denying Caruso's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. We will affirm.

The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and appellate jurisdiction is vested in this Court under 28 U.S.C. § 1291. We must affirm the District Court if it correctly found the decision of the Commissioner to be supported by substantial evidence. 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). By substantial evidence we do "not mean a large or considerable amount of evidence, but rather, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938)).

In determining whether a claimant qualifies for benefits, the Commissioner must consider, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals the criteria of an impairment listed in the Social Security Administration Regulations;[1] (4) if not, whether the claimant's impairment prevents the performance of past relevant work; and (5) if so, whether the claimant can perform any other work in the national economy, given the claimant's age, education, experience, and health. 20 C.F.R. § 404.1520; Plummer v. Apfel, 186 F.3d 422, 428 (3d

---

[1]See 20 C.F.R. pt. 404, subpt. P, app.1.

2

Cir. 1999). The burden is on the claimant at the first four steps, but shifts to the Commissioner at the final step. <u>Kangas v. Bowen</u>, 823 F.2d 777 (3d Cir. 1987).

As we write for the litigants, who are familiar with the facts of this case, we provide only a brief summary of those facts at the outset, incorporating additional facts as relevant to our discussion of the issues. Caruso injured her back in slip and fall accidents in 1994 and 1995, but continued to work until she reinjured herself while sneezing in 1996. The Administrative Law Judge ("ALJ") determined that Caruso had not engaged in substantial gainful activity since December 23, 1996 due to her medical condition, satisfying step 1. As for step 2, the ALJ found that Caruso had "lumbosacral radiculitis and radiculopathy, impairments that cause significant vocationally relevant limitations." Regarding step 3, the ALJ determined that Caruso did not have an "impairment or combination of impairments that [met] the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1)." At step 4, the ALJ found that Caruso's past, relevant work was that of a deli clerk, and that Caruso could not perform this work anymore. The ALJ concluded, however, that Caruso had the "residual functional capacity to perform the exertional demands of sedentary work." At this point, the burden shifted to the Commissioner to show that there were jobs existing in the national economy in significant numbers that Caruso could still perform–step 5. Applying Medical-Vocational Rule 201.24 set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that such jobs exist.

Caruso contests the decision of the Commissioner in four regards. She asserts that the Commissioner: (1) issued an impermissibly conclusory statement at step 3 without specifying any particular Listing or making any comparison with that Listing; (2) improperly announced a residual functional capacity assessment, which was unaccompanied by any articulated evidentiary foundation; (3) ignored the mandated protocol when evaluating her pain; and (4) improperly utilized grid rulings at step 5. We will address these issues in turn.

I.

At step 3, the ALJ must compare the claimant's medical evidence to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). We have explained that at this step, "this Court requires the ALJ to set forth the reasons" for his or her decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.2d 112, 118-19 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981)). In Burnett, we were troubled by the ALJ's summary conclusion that the claimant suffered from a severe musculoskeletal impairment, but that "said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." 220 F.3d at 119. We remanded the case so the ALJ could explain whether and why Burnett's back and knee impairments, either alone or combined, were equivalent to the listed impairments in the relevant section. Id. at 119-20.

Burnett does not require an ALJ to use "magic language" or adhere to a particular

4

analytical format.  Rather, the purpose of <u>Burnett</u> is to ensure sufficient development of the record and explanation of findings to permit meaningful judicial review.  <u>Id.</u> at 120. In this case, the ALJ's decision, read as a whole, convinces us that he considered the appropriate factors in reaching the conclusion that Caruso did not meet the criteria of any of the listed impairments described in Appendix 1 of the Regulations.

The ALJ's discussion of the listing of impairments at step 3 reads as follows:

> The evidence supports a finding that the claimant has lumbosacral radiculitis and radiculopathy, impairments that cause significant vocationally relevant limitations.  The claimant has no impairment or combination of impairments that meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations.  No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment or combination of impairments.

Caruso argues that because the ALJ did not explicitly identify which Listing he considered (the Commissioner's listings contain fourteen "chapters" and 120 disease "processes"), the ALJ did not adequately explain his findings as required under <u>Burnett</u>. Indeed, the language the ALJ used is similar to that rejected in <u>Burnett</u>.  Unlike in <u>Burnett</u>, however, there was only one Listing applicable to Caruso's lumbosacral radiculitis and radiculopathy, *i.e.*, Listing 1.05C.[2]  Consistent with this conclusion,

---

[2]The muskuloskeletal listings were amended effective February 19, 2002; the current Listing relevant to back impairments is now Listing 1.04.  For purposes of our analysis we review the ALJ's decision based upon the law that was in effect at the time of the ALJ's decision.  <u>See</u> 66 Fed. Reg. 58010 (Nov. 19, 2001).  At the time of the ALJ's decision, spinal disorders were considered under Listing 1.05, with Listing 1.05C the only relevant Listing.  Listing 1.05C provided:

throughout the opinion the ALJ recited and analyzed the criteria under Listing 1.05C. Therefore, we are able, as was the District Court, to conduct the meaningful review required by Burnett, and we find the ALJ's conclusions at step 3 to be supported by substantial evidence. In reaching this conclusion, we note, as the Commissioner has noted, that, on appeal, Caruso has not invoked any particular Listing, much less argued that there is evidence to support any particular Listing.

## II.

We next address Caruso's argument that the ALJ did not adequately support his finding that she retained a residual functional capacity[3] for sedentary work.[4] We disagree. The ALJ examined relevant medical evidence and, as discussed separately below, properly examined Caruso's subjective complaints of pain, finding them not entirely credible. The ALJ evaluated reports from Caruso's chiropractors and noted that they

---

C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
1. Pain, muscles spasm, and significant limitation of motion in the spine; and
2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

[3]"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1991)).

[4]Sedentary work involves lifting no more than ten pounds at a time, and occasionally lifting or carrying of articles like docket files, ledgers and small tools. Sedentary jobs require mostly sitting with occasional walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a).

found she was capable of performing sedentary work.[5] The ALJ also recounted Dr. Ahmed's August 4, 1997 examination of Caruso, following which he concluded, among other things, that the range of motion of Caruso's upper extremities and her muscle strength were "completely" normal, as were her lower extremities. And, we note, Dr. Atienza and Dr. Walsh, albeit State non-examining physicians, found that Caruso could perform medium work.

III.

We turn, next, to Caruso's argument that the ALJ did not properly assess her subjective complaints of pain. Again, we disagree. The Social Security regulations provide the standard for evaluating a claimant's subjective complaints, including pain. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Once a claimant establishes a medical impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged and which, taken with all other evidence, could lead to a conclusion of disability, the ALJ must assess the degree to which the claimant is accurately stating his or her subjective symptoms or the extent to which they are disabling. Id.; 20 C.F.R. § 416.929. In addition to medical evidence, the following factors may be considered in assessing the credibility of a claimant's statements: (1) daily

---

[5]Although we generally prefer reports from physicians, an ALJ may rely upon the opinions of chiropractors to ascertain the severity of a claimant's impairments. See 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999). Here, such reliance was well-advised as Caruso had not seen a medical doctor since July of 1997.

activities; (2) duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms. 20 C.F.R. §§ 416.929(c)(3)(I)-(vii).

Here, the ALJ discussed at length how the objective medical evidence failed to justify fully crediting Caruso's complaints of pain.[6] The ALJ also recognized that the additional, enumerated factors undermined her assertions of the severity of any pain she may have had. For example, Caruso only went to chiropractors since 1997 and stated that this treatment helped her. She did not take any prescription pain medication, but rather relied on Tylenol. Moreover, her daily activities belied her allegations of pain. Specifically, she admitted to dusting, vacuuming, cooking, grocery shopping, and driving short distances. In short, substantial evidence supports the ALJ's findings with respect to Caruso's subjective complaints.

IV.

Finally, we examine Caruso's claim that the ALJ improperly relied on the Medical-Vocational Guidelines in finding that other work Caruso could perform existed in significant numbers in the national economy. Once more, we disagree.

---

[6]To be sure, Caruso clearly has some pain as she has spasms. The ALJ recognizes this fact in his opinion.

8

The Medical-Vocational Guidelines take account only of exertional impairments. Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569(b). Non-exertional impairments are all other impairments that do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569(c)(1).[7] We noted in Sykes v. Apfel:

> [t]he grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus under [Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)] the practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand. 228 F.3d 259, 270 (3d Cir. 2000).

Caruso complains of postural limitations in the form of inability to rotate or flex her neck and back, and claims she cannot stoop or crawl and has trouble bending and crouching.[8] She argues that under Sykes, the ALJ had to consider these non-

---

[7]Examples of non-exertional impairments include: depression, anxiety, difficulty concentrating or remembering, difficulty seeing or hearing, physical intolerance to items such as dust or fumes, or difficulty reaching handling, stooping, climbing, crawling or crouching. 20 C.F.R. § 404.1569(c)(1).

[8]According to the District Court, "because they affect plaintiff's 'ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling),'" such limitations are exertional. (citing 20 C.F.R. § 404.1569(b)). This is incorrect, albeit harmless. In Stunkard v. Secretary, 841 F.2d 57 (3d Cir. 1988), we explicitly found postural limitations of bending, stooping, and kneeling to be non-

9

exertional limitations in addition to the Guidelines. The ALJ specifically found, however, that Caruso "has not had any significant non-exertional limitations." The relevant question, therefore, is whether this finding was supported by substantial evidence. We believe that it was. Although there exists some evidence of postural limitations, taken as a whole, the objective medical evidence coupled with Caruso's own testimony substantially supports the ALJ's conclusion that any such limitations were not significant.

For the foregoing reasons, we will affirm the April 10, 2003 order of the District Court.

---

exertional. We noted, "[n]onexertional impairments . . . involve limitations such as postural and manipulative impairments that do not affect a claimant's physical strength but may nevertheless prevent a claimant from engaging in gainful employment." Id. at 60 (citing 20 C.F.R. § 404.1545(d)).