

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2006

# Sassone v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2089

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sassone v. Comm Social Security" (2006). *2006 Decisions.* Paper 1735.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1735

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2089

———

MICHAEL S. SASSONE,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from an Order of the United States
District Court for the District of New Jersey
(Civil Action No. 03-cv-5831)
District Judge: Honorable Joel A. Pisano

———

Submitted under Third Circuit LAR 34.1(a)
January 13, 2006

Before: BARRY, AMBRO and ALDISERT, Circuit Judges.

(Filed:  January 20, 2006)

———

**OPINION**

———

ALDISERT, Circuit Judge.

        Appellant Michael S. Sassone asks us to conclude that the District Court erred in

affirming the Commissioner of the Social Security Administration's final decision

denying Sassone's claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"). The District Court exercised jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We conclude that substantial evidence supports the Commissioner's determination that Sassone was capable of performing a significant number of light and sedentary jobs in the national economy, and that he thus was not disabled as defined by the Act. Accordingly, we will affirm.

## I.

The parties are familiar with the facts and procedural history both in the District Court and before the Administrative Law Judge ("ALJ"), so we will discuss only the legal issues presented before us and the material facts relating thereto.

Courts may review the Commissioner's factual findings only to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g) (Supp. 2004) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). The Supreme Court has interpreted the statutory standard of "substantial evidence" to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence requires more than a mere scintilla of evidence, but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). The presence of

2

evidence in the record that supports a contrary conclusion does not undermine the

Commissioner's decision so long as the record provides substantial support for that

decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The reviewing court

looks to the record as a whole, Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981) (per

curiam), and in assessing the extent to which the record supports the Commissioner's

conclusions, the court reviews objective medical facts, diagnoses or medical opinions

based on those facts, subjective complaints of pain or disability, and the claimant's age,

education, and work history. Jones v. Harris, 497 F. Supp. 161, 167 (E.D. Pa. 1980).

The Commissioner has implemented a five-step procedure for the assessment of

disability claims. See 20 C.F.R. § 404.1520. We have summarized this process as

follows:

> In step one, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will
> be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290-91,
> 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine
> whether the claimant is suffering from a severe impairment. 20 C.F.R. §
> 404.1520(c). If the claimant fails to show that her impairments are "severe",
> she is ineligible for disability benefits. In step three, the Commissioner
> compares the medical evidence of the claimant's impairment to a list of
> impairments presumed severe enough to preclude any gainful work. 20 C.F.R.
> § 404.1520(d). If a claimant does not suffer from a listed impairment or its
> equivalent, the analysis proceeds to steps four and five. Step four requires the
> ALJ to consider whether the claimant retains the residual functional capacity
> to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant
> bears the burden of demonstrating an inability to return to her past relevant
> work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).
>
> If the claimant is unable to resume her former occupation, the evaluation
> moves to the final step. At this stage, the burden of production shifts to the

> Commissioner, who must demonstrate [that] the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

For a claimant to recover under the Act, proof of disability must be established through objective medical evidence. 42 U.S.C. § 423(d)(5)(A). The Commissioner considers objective medical evidence to be medical signs and laboratory findings. 20 C.F.R. § 404.1529(a). An individual's description of his or her pain or symptoms, although relevant, is not conclusive in itself. 42 U.S.C. § 423(d)(5)(A); see 20 C.F.R. § 404.1529(b) (stating that symptoms alone "will not be found to affect [the claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present"). We now examine the facts in this case in light of the foregoing legal precepts.

## II.

The ALJ conducted Sassone's disability analysis in accord with the required five-step sequential analysis. See 20 C.F.R. § 404.1520. In satisfying step one, the ALJ found there to be no evidence showing that Sassone had engaged in work activity after his alleged disability onset date. As for step two, the ALJ determined that neither Sassone's diabetes, heart disease, poor vision, high blood pressure nor his rotator cuff problems

4

could be deemed "severe impairments" as that term is defined in the regulations. With respect to step three, the ALJ did find that Sassone's right hip osteoarthritis was "severe," but he ultimately concluded that neither this impairment nor any other, "singly or in combination, meets or equals the severity of any impairment listed in" the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that notwithstanding Sassone's impairments, he had the residual functional capacity to perform light work as defined by the Commissioner at 20 C.F.R. § 404.1567(b). Moreover, the ALJ found that Sassone's past relevant work as a security guard fell under the category of light work. Accordingly, the ALJ's analysis ceased at step four as Sassone was not disabled as defined by the Act.

III.

Sassone contends that substantial evidence does not support the Commissioner's decision in four regards. He asserts that (1) under the required step two analysis, the ALJ improperly found that Sassone's diabetes, hypertension and back complaints were not severe impairments; (2) the ALJ erred in not raising the issue of obesity in his order; (3) the ALJ erred in failing to find that Sassone had a severe psychiatric impairment; and (4) under steps three and four of the Commissioner's sequential evaluation, the ALJ's discussion of his findings does not provide the necessary reasoning to permit "meaningful judicial review" by this Court.

IV.

The ALJ properly decided that Sassone's diabetes, hypertension and back complaints were not severe impairments. The record is replete with mentions of Sassone's blood pressure, diabetes and back pain, but Sassone fails to cite to any medical report diagnosing him with a condition resulting from these ailments that could be considered a "severe impairment" under 20 C.F.R. § 404.1521. Moreover, notwithstanding reports in the record detailing Sassone's blood pressure and diabetes, substantial medical evidence supports the ALJ's finding that these conditions, either alone or *en masse*, fail to rise to the level of a severe impairment. The ALJ noted that Sassone is not under medical care to treat his blood pressure or diabetes, and there are no medical reports indicating any end-organ damage or quantifiable complications resulting from Sassone's blood pressure or diabetes. Substantial evidence therefore supports the ALJ's conclusion that Sassone's diabetes and hypertension are not severe impairments.

The ALJ also concluded that the facts belie the existence of any disabling condition resulting from Sassone's back pain. A severe impairment is something that significantly limits a claimant's ability to do basic work activities, which in the case of a physical ailment means that it inhibits a claimant's ability to walk, sit, stand, lift, reach and carry. 20 C.F.R. § 404.1521. Under 20 C.F.R. § 404.1529(b), more than just Sassone's subjective complaints of pain are needed to find that such pain constitutes a severe impairment. Here, Sassone's subjective complaints of pain are not sufficiently supported by the necessary objective medical evidence to allow the ALJ to decide that

6

Sassone's back pain constitutes a severe impairment.[1]  Sassone cites only to a June 29, 2001 examination by a Dr. Thomas Sculco, in which Dr. Sculco stated that Sassone's "[r]ange of motion of his hip is painless today," but that "[h]e is unable to return to work at this time because of severe back and leg pain with numbness and due to complications referable to his diabetes as well as persistent difficulty walking."  (Tr. at 199.)  The ALJ reviewed and discussed this report, but ultimately concluded that the weight of the "signs and findings" contained in this and other reports indicates that Sassone retains "a normal ability to stand, sit, and use his arms."  We agree that substantial evidence supports this conclusion.  Although numerous physicians' reports indicate that Sassone suffers back pain, they also indicate that he retains the ability to perform basic work activities.  Based on this evidence, a reasonable mind could conclude that Sassone's back pain is not a severe impairment.

Additionally, the ALJ did not err at step two of the Commissioner's sequential evaluation in not raising the issue of obesity because Sassone did not allege that he was obese and he provided no objective medical evidence indicating that his weight problem caused or contributed to any severe impairments.  Sassone, who is 5'7" and weighs 270 pounds, contends that the ALJ "forgot" that Sassone's obesity is a severe impairment.

[1]  Furthermore, the ALJ discounted the credibility of Sassone's subjective complaints of pain when he noted that Sassone takes no prescribed medications for his back pain, there is no evidence of ongoing medical treatment, no assistive walking device has been prescribed, and Sassone only attended two physical therapy sessions following his hip surgery despite a physician's recommendation for further therapy.  We agree that these facts discount the weight of Sassone's subjective complaints.

7

Again, a claimant for disability must support his or her contentions with objective medical evidence. See 42 U.S.C. § 423(d)(5)(A). The Social Security Administration itself has said that although obesity may at times reach the level of a severe impairment, in establishing the existence of obesity, especially that reaching the level of a severe impairment, the Administration will generally rely on the judgment of an examining physician. Social Security Ruling 02-1p, 2000 WL 628049, at *4-6 (Sept. 12, 2002). Here, no examining physician provided a report indicating such a severe impairment.

Although the ALJ could have considered Sassone's weight as a severe impairment even if obesity was not alleged, we cannot fault the ALJ for failing to discuss Sassone's obesity because the record contains no mentions of a physician diagnosing or treating Sassone for obesity[2] and contains no objective medical evidence of Sassone's weight condition in relation to any resulting disability. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (upholding a decision of the ALJ, notwithstanding his failure to discuss obesity, because the record contained no mention of obesity contributing to a severe impairment when the claimant, who failed to allege obesity as an impairment, stood 5'2" and weighed 245 pounds). Moreover, because Sassone's physicians were aware of his weight problem, (see Tr. at 143.), the ALJ's discussion and adoption of their medical conclusions constitutes, at a minimum, an "indirect consideration" and rejection

_____

[2] Several physicians did describe Sassone as obese in their physical examinations, but none of these physicians go much further in their analyses than using this descriptive statement. (See Tr. at 143, 157, 203.)

8

of Sassone's weight condition in his disability analysis. See Rutherford, 399 F.3d at 553.

Likewise, the ALJ did not err in failing to determine that Sassone had a severe psychiatric impairment because here, too, Sassone never alleged that he was disabled as a result of a psychiatric impairment. The evidence did not show that he had limitations because of a psychiatric impairment and Sassone never received psychiatric treatment for any psychiatric problems. A claimant suffers from a severe psychiatric impairment meriting a disability finding if, for example, the claimant has the inability to understand, carry out and remember simple instructions; has difficulty in the use of judgment; cannot respond appropriately to supervision, co-workers and usual work situations; and/or cannot deal with "changes in a routine work setting." 20 C.F.R. § 404.1521(b)(3)-(6) (listing examples of psychiatric problems that may indicate a severe impairment). The physician whom the Social Security Administration requested to perform a psychiatric evaluation, Dr. Vasudev N. Makhija, M.D., found no evidence of any psychiatric disorders exhibiting such levels of severity. (See Tr. at 203.) The Commissioner's Residual Functional Capacity Assessment echoed this conclusion. In light of such uncontroverted medical evidence, the ALJ did not err in concluding that Sassone suffered from no severe psychiatric impairments.

Moreover, the ALJ provided an ample analysis to permit "meaningful judicial review" for his finding at step three of the Commissioner's analysis. Sassone argues that, in accordance with our requirements in Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-120 (3d Cir. 2000), the ALJ failed to articulate why his impairments did not match

one or more of the Commissioner's listed impairments. In <u>Burnett</u> we rejected an ALJ's use of conclusory statements in step three analyses, and required him to set forth the reasons for his conclusions that a claimant's impairment does not meet a listed impairment. <u>Id.</u> We do not, however, require an ALJ to use "magic words" in his analysis. <u>See</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004) ("<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis."). We simply require that the record be developed sufficiently to permit meaningful appellate review. <u>Id.</u>

Considering the ALJ's decision as a whole, we are satisfied that he provides sufficient analysis of Sassone's contentions to permit meaningful judicial review. The ALJ did not simply make the bald statement, as Sassone contends, that Sassone does not satisfy step three; he conducted a thorough three-page analysis of Sassone's claimed disabling ailments. Ultimately, the ALJ concluded that only one ailment, Sassone's osteoarthritis, constituted a severe impairment meriting analysis beyond step two, but in his step three analysis, he concluded that this ailment was not the equivalent of any of the Commissioner's listed impairments.

Sassone argues that the ALJ's decision is deficient because it does not indicate which listed impairments were considered and rejected. We disagree. First, the ALJ was not required to discuss the applicability of the listings at step three for those ailments that Sassone did not provide sufficient objective medical evidence for the ALJ to classify as severe impairments in step two. Logically, if insufficient evidence exists to support an

10

ALJ's determination that an ailment constitutes a severe impairment, then his or her analysis of that ailment should cease at step two. See 20 C.F.R. § 404.1526 (stating that medical equivalence to a listed severe impairment is determined by medical evidence only).

Second, as Sassone's osteoarthritis was the only ailment which constituted a severe impairment under the law, only one of the listed impairments could have been possibly equivalent to Sassone's osteoarthritis: 1.02 Major dysfunction of a joint(s) (due to any cause).[3] See 20 C.F.R. Pt. 404, Subpt. P, App.1. Although we stated in Burnett that the burden is on the ALJ to "identify the relevant listed impairments," 220 F.3d at 120 n.2, we have repeatedly indicated that an ALJ does not commit reversible error by failing to identify a specific listed impairment when only one listed impairment could possibly apply to the impairment under consideration. See Caruso v. Comm'r of Soc. Sec., No. 03-2909, 2004 WL 1147065, at **1 (3d Cir. May 19, 2004) (not published); Maldonado

_____

[3]

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App.1.

11

v. Comm'r of Soc. Sec., No. 03-2759, 2004 WL 1012185, at **2 (3d Cir. May 5, 2004) (not published). Furthermore, the ALJ implicitly addressed in the negative each of the requirements of Listing 1.02. He found that Sassone ambulates freely without a prescribed assistive walking device; that Sassone's rotator cuff problems are not severe impairments; and that he can perform "light work," which has as a basic requirement the ability to do a "good deal of walking," see 20 C.F.R. § 404.1567(b). In sum, because we are able to conduct a meaningful review of the ALJ's step three equivalency examination, we find no error in the ALJ's failure to cite a specific listed impairment. Moreover, substantial evidence supports the ALJ's finding that Sassone's osteoarthritis does not meet any listed impairment.

Finally, the ALJ's decision contains ample detail to permit meaningful judicial review of his finding, at step four, that Sassone can perform light work as defined at 30 C.F.R. § 404.1567(b).[4] In step four, the ALJ must determine whether the claimant's residual function capacity permits him to perform his past relevant work. If he can, the claimant is not disabled. See 20 C.F.R. § 404.1520(e). In making this residual function

---

[4] The Commissioner defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

12

capacity determination, the ALJ must consider all the evidence before him, and must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett, 220 F.3d at 121.

Here, contrary to Sassone's contention, the ALJ met the requirements of Burnett and properly articulated the reasons for his residual function determination. First, the ALJ indicated that he considered all the evidence before him and determined that Sassone retains the residual capacity to perform light work. This conclusion follows three pages of analysis of Sassone's claimed ailments in which the ALJ discusses each ailment and comments on its severity and limiting effects. This detailed discussion more than satisfies our Burnett requirement that the ALJ provide reasons for the evidence he is discounting. Second, in discussing the evidence that supported his ultimate conclusion, the ALJ stated that he was giving great weight to the assessment of the Commissioner's Medical Expert because the assessment was "well supported by the medical evidence of record."[5] Third, the ALJ noted that Sassone's more recent relevant work was as a security guard, which he concluded to be a job "light in exertional demands" according to the Dictionary of Occupational Text (1991). The ALJ then compared Sassone's functional abilities, as stated by the Commissioner's Medical Expert, with the requirements of a security guard's

---

[5] In his report, the Commissioner's Medical Expert, who himself cited the conclusions of other examining physicians, concluded that Sassone could occasionally lift or carry a 20 pound burden, and frequently lift or carry 10 pounds. (Tr. at 212.) He indicated that Sassone could sit, stand, or walk for upwards of six hours in an eight hour workday. (Id.) The Expert only indicated that Sassone should never climb and that his ability to push and/or pull objects was limited by infirmities in his lower extremities. (Id. at 212-213.)

13

job, and concluded that there is no reason Sassone could not return to his past relevant work as a security guard. This conclusion meant that the sequential analysis must cease at step four and the ALJ must find Sassone not disabled.

In addition to fully explaining his reasoning, substantial evidence supports the ALJ's step-four determination. We find it significant that Sassone himself described his past job as a security guard to consist of "sitting in front of the TV cameras" and that it was a "sit down job." (Tr. at 27, 29.) These statements bolster the ALJ's determination that Sassone's past relevant work as a security guard constituted "light work" under the terms of 20 C.F.R. § 404.1567(b). Furthermore, they support the ALJ's conclusion that Sassone could return to this work because this "sit down job" would fall within the zone of Sassone's capabilities as described by the Commissioner's Medical Expert. Finally, because the ALJ determined that Sassone suffered from only one severe impairment, his osteoarthritis of the right hip, the ALJ's conclusion that Sassone can perform light work does not require Sassone to perform tasks prohibited by his osteoarthritis, which the ALJ determined to be heavy lifting, heavy carrying, constant bending, squatting, crawling or climbing. None of these osteoarthritis complications would prevent Sassone from performing the duties of light work as defined by 20 C.F.R. § 404.1567(b). Accordingly, substantial evidence supports the ALJ's findings.

## V.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the district court will be affirmed.

14