Ira E. RUPARD III

v.

Michael J. ASTRUE, Commissioner of Social Security.

Civil Action No. 07–3989.

United States District Court, E.D. Pennsylvania.

June 16, 2009.

Beth Arnold, Binder and Binder, Merion, PA, for Plaintiff.

Dina White Griffin, Sandra Romagnole, Office of the General Counsel, Joyce M.J. Gordon, Social Security Administration, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

SURRICK, District Judge.

Presently before the Court is an action brought by Plaintiff Ira E. Rupard III ("Plaintiff") under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, we will adopt the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey and remand the case to the Commissioner for further proceedings consistent with the Report and Recommendation and this Memorandum Opinion.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed for DIB on March 15, 2004, claiming that he was disabled as of January 30, 2001. (R. 46.) Plaintiff's insured status expired on September 30,

2001. (*Id.* at 17.) After Plaintiff's application was denied on February 25, 2005 (*Id.* at 28–31), Plaintiff requested an administrative hearing (*Id.* at 32). A hearing was held on May 24, 2006. (*Id.* at 216–32.) On August 3, 2006, the administrative law judge ("ALJ") issued a decision concluding that Plaintiff was not disabled. (*Id.* at 17–24.) Plaintiff appealed the decision and submitted additional evidence, including medical records, from Dr. Thomas Whalen, M.D., which the Appeals Council made a part of the record. (*Id.* at 8.) On August 10, 2007, the Appeals Council denied Plaintiff's request for review.[1] (*Id.* at 4–6.)

On June 28, 2007, Plaintiff filed a Complaint seeking review of the unfavorable decision. (Doc. No. 1.) Plaintiff filed a Brief and Statement of Issues in Support of his Request for Review (Doc. No. 6) and the Commissioner filed a response in opposition (Doc. No. 9), to which Plaintiff filed a reply (Doc. No. 10). On February 13, 2008, pursuant to Local Rule 72.1 and 28 U.S.C. § 636(b), we referred the matter to Magistrate Judge Hey for a Report and Recommendation. (Doc. No. 11.) On August 27, 2008, Magistrate Judge Hey filed a Report and Recommendation recommending that the case be remanded to the Commissioner for further proceedings. (Doc. No. 12.) The Commissioner filed Objections on September 9, 2008. (Doc. No. 13.) The Commissioner argues that (1) Magistrate Judge Hey based her recommendation for remand "upon an impermissible re-weighing of the evidence" (*Id.* at 2) and (2) Magistrate Judge Hey's "recommendation that the ALJ further consider the evidence of [Plaintiff's] hand impairment is not based on objective evidence of an impairment" (*Id.* at 5). Plaintiff filed a response to the Commissioner's Objections. (Doc. No. 15.) The matter is now ripe for review.

### B. Factual Background[2]

Plaintiff was 38 years old at the time of his alleged onset of disability. He has a ninth-grade education (R. 104) and a work

---

1. The ALJ's decision thus became the final decision of the Commissioner under 20 C.F.R. § 404.981.

2. The facts in this case are fully recited in the Report and Recommendation. We recite only those facts relating to Plaintiff's hand impairment. However, we note that in addition to Plaintiff's alleged hand impairment, he suffers from osteoarthritis of the left knee as well as depression and drug and alcohol abuse. (*See* R. 19, Finding 3 ("The claimant has the following severe impairment: Osteoarthritis of the left knee (20 CFR 404.1520(c)). He also suffers with non-severe type impairments in the form of depression and drug and alcohol abuse.").) The ALJ found that Plaintiff's residual functional capacity ("RFC") permits him to

lift and carry at least ten pounds on a frequent basis and about twenty pounds on an occasional basis. He is capable of standing and or walking for at least six hours in any eight-hour period. He has no restrictions on his ability to sit for prolonged periods. He may be occasionally limited in his ability to engage in climbing activity, balancing, stooping, kneeling, crouching, and crawling. He has no manipulative, visual, communicative, or environmental type limitations.

(*Id.* at 20, Finding 5.) The ALJ found that because of these limitations, he is unable to perform any past relevant work:

The claimant has past relevant work as a self-employed painter. This type of work may require lifting and carrying work related supplies, such as a five-gallon paint bucket, weighing in excess of twenty pounds. Accordingly, the claimant is unable to perform past relevant work.

(*Id.* at 23.) The ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566)." (*Id.* at 23, Finding 10.) On remand, the ALJ should not only consider Plaintiff's hand impairment, the ALJ should consider the hand impairment in combination with Plaintiff's other impairments.

history of house painting and home improvement (*Id.* at 62–63). In his DIB application, Plaintiff reported having rheumatoid arthritis that limited the use of both of his hands for holding and gripping objects. (*Id.* at 61–62.) Rheumatologist John S. Bomalaski, M.D., examined Plaintiff in February 2000 and diagnosed him as having "[b]ilateral hand degenerative arthritis, primarily at the thumb." (*Id.* at 115.) Dr. Bomalaski also noted that Plaintiff "does have a positive rheumatoid factor, but does not have active synovitis. Approximately 5–10% of the population has a positive rheumatoid factor, which are false positive tests." (*Id.*) Examination of radiographs taken of Plaintiff's hands on January 26, 2000, showed "[n]o significant radiographic abnormality on either side." (*Id.* at 99.) However, Dr. Bomalaski found that these X-rays "demonstrated degenerative arthritis." (*Id.* at 112.) Dr. Bomalaski reported in January 2004 that a physical examination of Plaintiff's hands "demonstrates Hand Heberden's and Bouchard's nodes. There is no active synovitis at the hands." (*Id.*)

On August 20, 2004, Dr. Bomalaski completed an Arthritis Impairment Questionnaire. (*Id.* at 117–23.) Dr. Bomalaski reported Plaintiff's diagnosis of hand degenerative arthritis as a permanent problem. (*Id.* at 117.) Dr. Bomalaski also reported reduced grip strength in both hands (*Id.* at 117), swelling at the hand interphalangeal joints (*Id.* at 118), chronic hand pain (*Id.* at 118–19), and degenerative arthritis in the hands shown in the X-rays from January 26, 2000 (*Id.* at 118). Dr. Bomalaski advised that Plaintiff could occasionally lift and carry five to ten pounds. (*Id.* at 120.) The doctor also reported that Plaintiff has "significant lim-

itations in doing repetitive reaching, handling, fingering [and/or] lifting" (*Id.* at 122), and that Plaintiff would have moderate limitations during the work day in grasping / turning / twisting objects and in using fingers / hands for fine manipulations (*Id.*). Dr. Bomalaski advised that the symptoms and limitations that he described in the questionnaire began in 1985, but were "most prominent by 2000." (*Id.* at 123.)

On October 27, 2004, Dr. Thomas Whalen began treating Plaintiff. (*Id.* at 162.) Dr. Whalen completed a Rheumatoid Arthritis Impairment Questionnaire on November 5, 2005. (*Id.* at 162–68.) Dr. Whalen reported that Plaintiff had 50% reduced grip strength (*Id.* at 163), constant pain in his hands (*Id.* at 164), and could only occasionally lift and carry five to ten pounds (*Id.* at 166). These symptoms began at least in 2000, but probably as early as 1985, according to Dr. Whalen. (*Id.* at 168.) Dr. Whalen's medical records and treatment notes, dated October 27, 2004, through September 6, 2006, reveal diagnoses of arthritis in Plaintiff's hands. (*Id.* at 177–96.) Dr. Whalen completed a second Rheumatoid Arthritis Impairment Questionnaire on January 24, 2007. (*Id.* at 204–10.) The ALJ did not have access to the majority of Dr. Whalen's medical records when making his decision.[3]

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.

---

**3.** We did not take into consideration this additional evidence in making our determination. *See Matthews v. Apfel,* 239 F.3d 589, 594 (3d Cir.2001) (reiterating previous hold-

ings that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence").

§ 405(g). This Court reviews *de novo* objections to the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The factual findings of the Commissioner must be accepted as conclusive, however, if they are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401, 91 S.Ct. 1420 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). If the conclusion of the ALJ is supported by substantial evidence, this Court may not set aside the Commissioner's decision even if we would have resolved the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999); *see* 42 U.S.C. § 405(g).

## III. DISABILITY STANDARD

Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a disability. 42 U.S.C. § 423(a)(1)(D). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for disability benefits, therefore, a claimant must establish that he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Morales v. Apfel*, 225 F.3d 310, 315–16 (3d

Cir.2000) (internal quotation marks omitted).

Pursuant to 20 C.F.R. § 404.1520(a)(4), when deciding the merits of a disability claim, the ALJ applies a five-part inquiry to determine whether the claimant is entitled to disability benefits:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Allen v. Barnhart*, 417 F.3d 396, 401 n. 2 (3d Cir.2005) (quoting *Sykes v. Apfel*, 228 F.3d 259, 262–63 (3d Cir.2000)).

At issue in this case is the second step, which requires the ALJ to evaluate whether the claimant has a medically severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). To be found to be disabled, "[y]ou must have a severe impairment. If you do not have any impairment or combination of impairments which sig-

nificantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). Basic work activities include, among other things, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. . . ." 20 C.F.R. § 404.1521(b)(1). Although the claimant bears the burden of proof, "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir.2004). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir.2003). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met. . . ." *Id.*

## IV. DISCUSSION

The Report and Recommendation addressed several arguments by Plaintiff in opposition to the ALJ's unfavorable decision. The Magistrate Judge recommended: (1) "that the case be remanded for further consideration of Plaintiff's hand impairment" because Plaintiff presented sufficient evidence to satisfy the *de minimis* requirement of step two (Doc. No. 12 at 14); (2) "that, upon remand, the ALJ re-assess and clarify the weight given to the opinions of the treating physicians regarding Plaintiff's hand impairment" (*Id.* at 19); and (3) that the ALJ consider whether, after reconsidering Plaintiff's hand impairment, the ALJ may still rely on the Grids or whether a Vocational Expert will be needed (*Id.* at 24).

The Commissioner objects to the Report and Recommendation on two main grounds: (1) "the Magistrate Judge's recommendation for remand is based upon an impermissible re-weighing of the evidence and not upon the ALJ's failure to consider [Plaintiff's] hand impairment at step two"

(Doc. No. 13 at 1–2); and (2) "the Magistrate Judge's recommendation that the ALJ further consider the evidence of [Plaintiff's] hand impairment is not based on objective evidence of an impairment." (*Id.* at 5). The Commissioner argues that the ALJ's decision was supported by substantial evidence and should be affirmed. (*Id.* at 1.)

Plaintiff responds that the ALJ's "scattered references" to Plaintiff's hand impairment "do not rise to the level of a proper step-two determination" (Doc. No. 15 at 4) and that "[a]n ALJ must *explicitly* consider the severity of an impairment when the record fairly raises the issue of that impairment's impact on the claimant's ability to perform basic work activities." (*Id.* (emphasis in original).) Further, Plaintiff details the evidence in the record of his functional limitations resulting from his hand impairment. (*Id.* at 2 & n. 1.)

In his decision, the ALJ made the following finding concerning Plaintiff's impairments: "The claimant has the following severe impairment: Osteoarthritis of the left knee (20 CFR 404.1520(c)). He also suffers with non-severe type impairments in the form of depression and drug and alcohol abuse." (R. 19, Finding 3.) Neither the finding nor the explanation that followed made any mention of Plaintiff's alleged hand impairment. As to Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that Plaintiff has

the residual functional capacity to lift and carry at least ten pounds on a frequent basis and about twenty pounds on an occasional basis. He is capable of standing and or walking for at least six hours in any eight-hour period. He has no restrictions on his ability to sit for prolonged periods. He may be occasionally limited in his ability to engage in climbing activity, balancing, stooping, kneeling, crouching, and crawling. He

has no manipulative, visual, communicative, or environmental type limitations. (R. 20, Finding 5.) The ALJ again did not mention Plaintiff's hand impairment. The ALJ did mention the hand impairment several times throughout the written decision, although not in the context of the step-two inquiry. (*See* R. 20 (noting Plaintiff's testimony "that he is no longer able to hold anything in his hand"); R. 21 ("[Plaintiff] appeared to have a good grasp on the handle of the cane and leaned heavily on it while ambulating."); *id.* (noting that "[r]adiological examinations of the claimant's bilateral hands and knees were conducted on February 17, 2000 (Exhibit 1–F)"); *id.* (noting that Dr. Bomalaski diagnosed Plaintiff with bilateral hand degenerative arthritis, "primarily at the thumb"); R. 22 (describing the Arthritis Impairment Questionnaire prepared by Dr. Bomalaski which indicated, concerning Plaintiff's hand degenerative arthritis, that "there is no joint deformity but [there is] reduced grip strength," and "that [Plaintiff] is moderately limited in his ability to grasp, turn, and to twist objects with his hands; and his fine manipulations are moderately limited"); *id.* (noting that Dr. Bomalaski's treatment notes "repeatedly state moderate distress with pain in [Plaintiff's] hands").)

■ After reviewing the entire record, we find that the ALJ's failure to make a finding concerning the severity of Plaintiff's hand impairment requires that the case be remanded for further proceedings. *See Berrios–Vasquez v. Massanari,* No. 00–2713, 2001 WL 868666, at *7, 2001 U.S. Dist. LEXIS 11477, at *26 (E.D.Pa. May 10, 2001) (remanding to ALJ for consideration at step two of impairments that "[t]he ALJ failed to even mention . . . , even though there is sufficient evidence in the record to fairly raise the issue of their impact on the Plaintiff's ability to perform basic work activities"). There is no question that the ALJ did not expressly consid-

er Plaintiff's alleged hand impairment at step two. The ALJ made no finding one way or the other concerning Plaintiff's hand impairment. This silence cannot be interpreted as a determination that Plaintiff's hand impairment is not "severe," especially considering the fact that the ALJ expressly determined that Plaintiff's depression and drug and alcohol abuse are non-severe impairments.

In her Report and Recommendation, Magistrate Judge Hey stated: "I conclude that Plaintiff meets the de minimis standard of step two with regard to his hand impairment." (Doc. No. 12 at 12.) She also observed that "[g]iven the multiple references to Plaintiff's hand problems in the record—both in the medical evidence and Plaintiff's testimony—it was incumbent on the ALJ to at least consider his hand impairments at step two." (*Id.* at 13.) After reviewing the record, we understand why Magistrate Judge Hey concluded that the de minimis standard was met as to the hand impairment. However, we need not make a determination on the matter because we agree that it was incumbent upon the ALJ to expressly consider the hand impairment at step two. We remand this case because the ALJ failed to make any determination about Plaintiff's hand impairment at step two. Based upon the ALJ's failure to expressly consider evidence of Plaintiff's hand impairment, we cannot conclude that the ALJ's final determination is supported by substantial evidence.

We also reject the Commissioner's second objection to the Report and Recommendation. The Commissioner argues that the Magistrate Judge's recommendation that the ALJ further consider evidence of Plaintiff's hand impairment is not based on objective evidence of work-related limitations. (Doc. No. 13 at 5–7.) As noted above, contrary to the Commission-

er's assertions, the record does include evidence of functional limitations resulting from Plaintiff's alleged hand impairment. It is incumbent upon the ALJ to at least consider the evidence of Plaintiff's hand impairment and explain his conclusions on the matter. *See Berrios–Vasquez*, 2001 WL 868666, at *6, 2001 U.S. Dist. LEXIS 11477, at *18 ("Although the ALJ need not explicitly weigh every item of medical evidence in the file, he must explain his rejection of competent evidence supporting the Plaintiff's claims.") (citing *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001)).

In any event, the ALJ performed his evaluation without the benefit of the additional medical records that were included in the record by the Appeals Council. On remand, the ALJ should reassess the evidence in light of the entire record, including the additional treatment notes and other medical records submitted after the ALJ's original decision issued.[4]

## V. CONCLUSION

For these reasons, the Report and Recommendation is approved and adopted, with the exception of the Magistrate Judge's finding that Plaintiff satisfied the second step's de minimis requirement. The case shall be remanded to the ALJ for further proceedings consistent with this Memorandum Opinion and the Report and Recommendation.

An appropriate Order will follow.

---

4. "When a claimant offers evidence that was not before the ALJ, the Court may remand for further consideration of said evidence when the claimant shows that the evidence is new and material and that there is good cause why it was not presented to the ALJ." *Isaac v. Astrue*, No. 08–1661, 2009 WL 1492277, at *14, 2009 U.S. LEXIS 44914, at *43 (W.D.Pa. May 28, 2009) (citing *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir.2001)). Here, we are

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY, United States Magistrate Judge.

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons that follow, I find that the Commissioner's final decision does not contain substantial evidence to support the findings of fact and conclusions of law of the Administrative Law Judge ("ALJ"). Therefore, I recommend that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on March 15, 2004, alleging disability as of January 30, 2001, because of arthritis. *Tr.* at 46, 61. Plaintiff's insured status expired on September 30, 2001. *Id.* at 17. Therefore, in order to be eligible for DIB benefits, Plaintiff was required to show that he became disabled on or before September 30, 2001. *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.101.

Plaintiff's application was denied on February 25, 2005, after which Plaintiff requested an administrative hearing. *Id.* at 28–32. On May 24, 2006, an ALJ held an administrative hearing at which Plaintiff testified, but no vocational expert was

not remanding for the purpose of having the additional evidence considered by the ALJ and we did not take this additional evidence into consideration when making the decision to remand. However, since we are remanding the case on an independent basis, it is appropriate that the ALJ consider the entire administrative record, including the additional evidence.

present. *Id.* at 218–32. In a decision dated August 3, 2006, the ALJ found Plaintiff not disabled because, although he was unable to perform any past relevant work due to his severe impairment of osteoarthritis of the left knee, there were a significant number of jobs that existed that Plaintiff could perform. *Id.* at 23. Plaintiff appealed the unfavorable decision to the Appeals Council, and forwarded additional medical reports for consideration. *Id.* at 8. On August 10, 2007, the Appeals Council denied Plaintiff's request for review. *Id.* at 4–6. Therefore, the decision of the ALJ is the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff filed his Complaint in this action on June 28, 2007. Plaintiff submitted his Brief and Statement of Issues in Support of Request for Review on December 19, 2007, and Defendant filed his Response to Request for Review on February 12, 2008. The matter is now ripe for review.

## II. *LEGAL STANDARD*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that the Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," and must be "more than a mere scintilla." *Burnett v. Commissioner of Social Sec. Admin.,* 220 F.3d 112, 118 (3d Cir.2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999)). The court has plenary review of legal issues. *Schaudeck v. Commissioner of Social Security,* 181 F.3d 429, 431 (3d Cir.1999) (citing 42 U.S.C. § 405(g)).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity for a statutory twelve-month period.'" 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;

3. If so, whether, based on the medical evidence, the claimant's impairment or combination of impairments meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work; and

5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*See Allen v. Barnhart,* 417 F.3d 396, 401 n. 2 (3d Cir.2005) (quoting *Sykes v. Apfel,* 228 F.3d 259, 262–63 (3d Cir.2000)) (internal citations omitted); *see* 20 C.F.R. § 404.1520(a)(4). The Plaintiff bears the burden of proof for steps one, two, and four of this test, while the Commissioner bears the burden of proof for the last step. *See id.*

## III. FACT RECORD AND THE ALJ'S DECISION

Plaintiff was 38 years of age at the time of his alleged onset of disability and 43 years of age at the time of the ALJ's decision. *Tr.* at 211. He is six feet tall, weighs 160 pounds, and has five children. *Id.* at 219. He has a ninth grade education. *Id.* at 104. At the time of his administrative hearing, Plaintiff had been separated from his second wife and was living with his 13 year-old son. *Id.* at 219. As previously noted, Plaintiff's last date insured was September 30, 2001.

In the application process, Plaintiff reported the following work history: painting/home improvement, mid 1990–early 1991; painting/remodeling, January 1997–late 1999; plumber, late 1999–late 2000; and self-employed painter, February 2001–November 2003. *Tr.* at 62, 74. Plaintiff testified that he last worked as a house painter and supervisor for a home restoration company for approximately eight months until January 30, 2001, when he was unable to perform the requirements of the job. *Id.* at 220, 230. He subsequently sought employment with several paint companies, but employers let him go within a day or two of being hired after they realized he could not perform the job requirements. *Id.* at 230. Although Plaintiff did not testify to working after January 2001, he had reported in his application that he worked as a part-time "self-employed painter" from February 2001 through November 2003, and that he stopped that work when his doctor told him to stop working. *Id.* at 62, 70.

In his application, Plaintiff stated that he suffered from rheumatoid arthritis, which caused "limited use of both hands for holding objects [and] gripping and writing." *Tr.* at 61–62. He also stated that he had "a plastic kneecap on left leg [and] pins in calf, ankle and toes [which] makes it difficult to climb ladders, kneel." *Id.* at 62.

The administrative record documents Plaintiff's history of arthritis.[1] In January 2000, Plaintiff's treating physician referred him to John S. Bomalaski, M.D., a rheumatologist, to address arthritic pain in Plaintiff's knee, legs, hands and back. *Id.* at 137. On January 26, 2000, radiological examinations of the Plaintiff's bilateral hands and knees were conducted. *Id.* at 98.

With respect to his knee, Plaintiff had experienced years of left knee pain following a motorcycle accident and surgery in 1987. *Tr.* at 19, 66, 114. Based on a review of his history and the x-rays, Dr. Bomalaski diagnosed Plaintiff with traumatic arthritis of the left knee with residual discomfort in the right ankle and right knee. *Id.* at 112, 115.[2]

---

[1] The record also documents a history of alcohol abuse and depression. For example, in December 2000, Plaintiff reported drinking four or five beers a day. *Tr.* at 136. In June 2001, Plaintiff reported drinking about two beers a day and occasional marijuana use. *Id.* at 133. In October 2003, he reported recent excessive alcohol consumption, and that he went through alcohol and drug rehabilitation nineteen years earlier. *Id.* at 131. On October 11, 2003, Plaintiff went to the emergency room after he fell out of a parked car and struck his head while intoxicated, resulting in a scalp laceration and a brief loss of consciousness. *Id.* at 102. While in the hospital, Plaintiff reported drinking an average of a six-pack of beer per day. *Id.* at 104.

His physical examination was normal, but his psychiatric evaluation gave an overall impression of a major depressive disorder and alcohol abuse, with likely dependence. *Id.* at 100, 105. A psychiatric review performed for the Disability Determination Service concluded that Plaintiff suffers from a depressive disorder which causes only mild functional limitations. *Id.* at 23, 143–55. Plaintiff has not appealed the ALJ's conclusion that his depression and drug and alcohol abuse are not severe impairments. *Id.* at 19.

[2] The x-rays revealed a post-operative left knee, with the presence of a single cortical pin transversely coarsening the lateral femoral condyle adjacent to the knee joint, minor

With respect to the pain in Plaintiff's hands, the radiologist's report states that the x-ray revealed "[n]o significant radiographic abnormality on either side." *Tr.* at 99. Dr. Bomalaski reviewed the x-ray and concluded that Plaintiff suffered from mild bilateral degenerative arthritis at the carpal-metacarpal joints. *Id.* at 112, 125. The doctor stated that Plaintiff had a positive rheumatoid factor but did not have active synovitis,[3] noting that approximately 5–10% of the population have a false positive rheumatoid factor. *Id.* at 115.

On August 20, 2004, Dr. Bomalaski prepared an Arthritis Impairment Questionnaire at the request of Plaintiff's attorney. *Tr.* at 117. Dr. Bomalaski noted Plaintiff's diagnoses of left knee degenerative/posttraumatic arthritis and hand degenerative arthritis, and the doctor described Plaintiff's symptoms as "chronic, persistent problems that have been progressive." *Id.* at 117, 123. The questionnaire indicates that Plaintiff exhibited reduced grip strength and an abnormal gait, and that Plaintiff's pain appears to be virtually constant. *Id.* at 117–119. Dr. Bomalaski noted that in an eight-hour day, Plaintiff is capable of sitting for seven hours and of standing or walking for an hour or less, and occasionally lifting and carrying five to ten pounds. *Id.* at 120. Dr. Bomalaski found that Plaintiff had moderate limita-

tions in repetitive work with his hands, and that he would need two or three breaks in an eight-hour workday to relieve pain. *Id.* at 122. Although the report is dated nearly three years after the date last insured of September 30, 2001, Dr. Bomalaski opined that the limitations he described first began "in 1985, but [were] most prominent by 2000." *Id.* at 123.

In October 2004, Plaintiff ceased treating with Dr. Bomalaski and began treating with Thomas J. Whalen, M.D. *Tr.* at 162. Dr. Whalen provided a Rheumatoid Arthritis Impairment Questionnaire dated November 5, 2005, in which he stated that Plaintiff suffers with posttraumatic osteoarthritis of the left knee and arthritis of the hands and spine, inflammation and pain of the mid and lower back, along with constant pain, joint instability, muscle spasm, and muscle atrophy. *Id.* at 162–64. Dr. Whalen found that Plaintiff had 50% reduced grip strength. *Id.* at 163. The doctor also found that Plaintiff cannot sit, stand, or walk for more than one hour in an eight-hour workday, and that he is likely to be absent from work more than ten times per month. *Id.* at 165, 167. Dr. Whalen opined that Plaintiff's limitations were present since "at least 2000," "probably 1985." *Id.* at 168.[4]

A medical consultant completed a Residual Functional Capacity ("RFC") Assess-

---

degenerative osteoarthritic changes to the left side, and bony densities which appeared benign and inconsequential. *Id.* at 99. A condyle is a "rounded projection on a bone, usually for articulation with another." The lateral condyle of the femur is the "lateral of the two surfaces at the distal end of the femur that articulate with the superior surfaces of the head of the tibia." Dorland's Illustrated Medical Dictionary, 31st ed. (2007) (*"DIMD"*), at 409.

3. Synovitis is defined as inflammation of fluid membranes located in joint cavities. Synovitis is usually painful, particularly on motion. *See DIMD* at 1878–79.

4. While Dr. Whalen's treatment records were not provided to the ALJ, they were submitted to the Appeals Council without apparent objection. *Tr.* at 22, 177–96, 198–210. These records indicate that Plaintiff treated with Dr. Whalen from October 2004 through September 2006, and that he was consistently diagnosed with arthritis. The records do not contain any references to Plaintiff's medical condition in 2000 and 2001. The records include a Rheumatoid Arthritis Impairment Questionnaire dated January 24, 2007, which contains similar, but not identical findings, to the questionnaire completed by Dr. Whalen in 2005. *Id.* at 204–10.

ment dated February 18, 2005, finding that Plaintiff was found capable of lifting and carrying twenty pounds occasionally and ten pounds frequently as of his date last insured. *Tr.* at 156–57. Plaintiff was also found to have no manipulative, visual, communicative or environmental limitations, as well as no limitations in his ability to sit, stand or walk. *Id.* at 157–159. However, the report found that Plaintiff may occasionally be limited in his ability to engage in climbing, balancing, stooping, kneeling, crouching, or crawling. *Id.* at 158.[5]

The ALJ found through his review of the objective medical evidence and administrative hearing testimony that Plaintiff was not disabled within the meaning of the Social Security Act. *Tr.* at 17. The ALJ found as follows:

1. [Plaintiff] met the insured status requirements of the Social Security Act through September 30, 2001.

2. [Plaintiff] has not engaged in substantial gainful activity since January 30, 2001, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3. [Plaintiff] has the following severe impairment: Osteoarthritis of the left knee (20 CFR 404.1520(c)). He also suffers with non-severe type impairments in the form of depression and drug and alcohol abuse.

. . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to lift and carry at least ten pounds on a frequent basis and about twenty pounds on an occasional basis. He is capable of standing and or walking for at least six hours in any eight hour period. He has no restrictions on his ability to sit for prolonged periods. He may be occasionally limited in his ability to engage in climbing activity, balancing, stooping, kneeling, crouching, and crawling. He has no manipulative, visual, communicative, or environmental type limitations.

. . .

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

. . . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1560(c) and 404.1566).

*Id.* at 19–24. Relying on the RFC, the ALJ concluded that Plaintiff "was capable of light work activity with no postural limitations." *Id.* at 23.[6] The ALJ further concluded that Plaintiff's limitations had

---

**5.** It is not clear whether the RFC consultant had access to the entire medical file, although the consultant referenced the February 2000 radiology report and a June 22, 2001, exam note wherein Plaintiff reported no joint pain and exhibited a full range of motion. *Tr.* at 160–61.

**6.** Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. *Id.* If someone can do light work, the Social Security Administration has

little to no effect on his ability to perform light work, and therefore relied on the Medical–Vocational Guidelines (the "Grids")[7] to determine that he could work, without calling for the testimony of a Vocational Expert. *Id.* at 24. As a result, the ALJ concluded that Plaintiff is not "disabled" within the meaning of the Social Security Act. *Id.*

In his present Request for Review, Plaintiff argues that the decision of the ALJ is not supported by substantial evidence because the ALJ (1) failed to properly consider Plaintiff's hand impairment, (2) improperly evaluated the medical evidence, (3) erroneously evaluated Plaintiff's subjective complaints, and (4) erred in determining Plaintiff's RFC and in relying on the Grids to conclude that Plaintiff was not disabled. In response, Defendant argues that the decision of the ALJ is well-supported by substantial evidence.

## IV. *DISCUSSION*

### A. *The A.L.J.'s Evaluation of Plaintiff's Hand Impairment at Step Two*

Plaintiff first argues that the opinion of the ALJ is not supported by substantial evidence because the ALJ erred by failing to acknowledge, at step two of the five-step sequential evaluation, that Plaintiff's arthritis of the hands is a severe impairment. Specifically, Plaintiff relies on Dr. Bomalaski's diagnosis of bilateral degenerative hand arthritis, and later on the findings of Dr. Whalen, both of whom opined that Plaintiff's limitations due to arthritis

in both his hands and his knee had been present since at least 2000. *See* Pl.'s Br. at 3–5.

■ Step two is known as the "severity regulation" because it focuses on whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it is "of magnitude sufficient to limit significantly the individual's ability to do basic work activities." *Santise v. Schweiker,* 676 F.2d 925, 927 (3d Cir.1982); *see also* 20 C.F.R. § 404.1520(c); S.S.R. 96–3p, "Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe." Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). A non-severe impairment is a "slight" abnormality which has a minimal effect on the individual such that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Bowen v. Yuckert,* 482 U.S. 137, 149–51, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In assessing the severity of an alleged impairment, the ALJ must consider "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). A claimant's burden at step two is not weighty. As the Third Circuit has stated, "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Commis-*

---

determined that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *Id.*

7. In order to simplify and expedite the determination of disability at step five (5), an ALJ applies a series of grids found at 20 C.F.R. Part 404, Subpart P, Appendix 2. The Grids contain a collection of administratively no-

ticed rules contained in several tables directing a conclusion of "disabled" or "not disabled" in individual cases based on various combinations of a claimant's RFC, age, education, and previous work experience. *See* 20 C.F.R. § 404.1569. The Grids are categorized according to whether the individual's RFC can sustain sedentary, light, or medium work. *See* Appendix 2, Table 1 (Sedentary), Table 2 (Light), Table 3 (Medium).

*sioner of Social Security,* 347 F.3d 541, 546–47 (3d Cir.2003).

I conclude that Plaintiff meets the de minimis standard of step two with regard to his hand impairment. On February 16, 2000, Dr. Bomalaski, a rheumatologist, diagnosed Plaintiff with bilateral hand degenerative arthritis, primarily at the thumb. *Tr.* at 115. The doctor based this diagnosis on Plaintiff's complaints of hand pain while working with wrenches as a plumber, and upon x-rays of Plaintiff's hands taken on January 26, 2000, which he concluded demonstrated mild degenerative joint disease ("DJD"). *Id.* at 114–15.[8] Dr. Bomalaski completed an Arthritis Impairment Questionnaire on August 20, 2004, in which he found that Plaintiff had moderate limitations in repetitive work with his hands and that the limitations first began "in 1985, but [were] most prominent by 2000." *Id.* at 122–23. Similarly, Dr. Whalen completed a Rheumatoid Arthritis Impairment Questionnaire in November 2005, in which he stated, among other things, that Plaintiff suffers from arthritis of the hands and has 50% reduced grip strength, and that the limitations were present since "at least 2000," "probably 1985." *Id.* 162–64, 168.

Moreover, the complaints of hand pain Plaintiff made to Dr. Bomalaski in 2000, and the hand-related limitations subsequently discussed by Dr. Bomalaski and Dr. Whalen, are generally consistent with Plaintiff's testimony regarding the problems he experienced during the relevant time period. For example, Plaintiff testified that he stopped working as a house painter and re-modeler in January 2001 because he was unable to perform the requirements of the job, which included carrying objects. *Id.* at 75, 220, 230. Given the multiple references to Plaintiff's hand problems in the record—both in the medical evidence and in Plaintiff's testimony—it was incumbent on the ALJ to at least consider his hand impairments at step two. *See Baker v. Barnhart,* No. 05–cv–4385, 2006 WL 1722414, at *5 (E.D.Pa. June 21, 2006) ("Due to the multiple references to [claimant's] migraine headaches in the medical record, the ALJ was obliged to discuss migraine headaches at step two of the five-step process") (citing *Reefer v. Barnhart,* 326 F.3d 376, 380–81 (3d Cir. 2003)).

Based on the foregoing, I find that the ALJ's step two determination is not supported by substantial evidence. Both Dr. Bomalaski and Dr. Whalen opined in their arthritis impairment questionnaires that Plaintiff's impairments, including hand pain and reduced grip strength, were present since 2000 and earlier. *Tr.* at 123, 168, 210. These opinions are consistent with Plaintiff's testimony regarding his work-related hand problems during the relevant time period. Taken together, this evidence is sufficient to satisfy the de minimis requirement of step two. Therefore, I recommend that the case be remanded for further consideration of Plaintiff's hand impairment.[9]

---

8. The radiologist's report states that the x-ray showed no abnormality on either side. *Id.* at 99. Nevertheless, Dr. Bomalaski's report states that he reviewed the x-rays and that they "demonstrate mild DJD at the carpal-metacarpal joints." *Id.* at 115.

9. This is not to say that the opinions of Dr. Bomalaski and Dr. Whalen will ultimately carry the day in establishing disability due to Plaintiff's hand impairments. The doctors' assessments were made in August 2004 and November 2005, respectively, and the record contains little by way of clinical findings related to Plaintiff's hand impairments prior to his date last insured of September 20, 2001. Nevertheless, I conclude that the doctors' consistent opinions regarding the extent of Plaintiffs hand impairment prior to his date last insured, together with Plaintiff's testimony, satisfy the de minimis standard of step two with regard to his hand impairments.

## B. *The ALJ's Evaluation of the Medical Evidence*

Plaintiff next argues that the opinion of the ALJ is not supported by substantial evidence because the ALJ improperly evaluated the medical evidence. Specifically, Plaintiff argues that the ALJ erred in failing to credit the opinions of Dr. Bomalaski and Dr. Whalen that Plaintiff could stand/walk for one hour in an eight hour day. *See* Pl.'s Br. at 6–7. Plaintiff also argues that the ALJ improperly failed to address other findings made by Dr. Bomalaski and Dr. Whalen, including Plaintiff's limited ability to lift and carry objects, the extent to which pain interferes with his ability to maintain attention and concentration, and that he would be likely to miss work two to three times per month due to his impairments. *Id.* at 6, n. 4.

As a general rule, "treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); *see also* S.S.R. 96–2P, "Policy Interpretation Ruling: Giving Controlling Weight to Treating Source Medical Opinions" (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in record). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985)). The opinions of a treating physician are entitled to controlling weight where the physician's opinion on the issues of the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2).

In discussing the medical evidence of record, the ALJ stated the following:

[Plaintiff's] attorney requested that Dr. Bomalaski prepare an Arthritis Impairment Questionnaire, which [the doctor] did on August 20, 2004. [Plaintiff's] diagnosis is left knee degenerative/post-traumatic arthritis and hand degenerative arthritis. The report indicates that there is no joint deformity but does indicate reduced grip strength. The report suggests an abnormal gait but it also points out that there is no muscle atrophy, weakness, or spasm. There is crepitus in the left knee. The medical report does state that [Plaintiff] appears to be in constant pain. The report also indicates that no devices, such as canes, have been prescribed to alleviate the pain symptoms. The report indicates that [Plaintiff] is moderately limited in his ability to grasp, turn, and to twist objects with his hands; and his fine manipulations are moderately limited. According to the report, [Plaintiff] is capable of sitting for prolonged periods and can lift and carry at least ten pounds. I accord this assessment some weight as it is fairly consistent with the preponderance of medical evidence of record including Dr. Bomalaski's treatment notes; except that there appears to be nothing to corroborate or to support his assessment that [Plaintiff] lacks the ability to stand for more than one hour. The treatment notes specifically state that [Plaintiff's] joints do not get red, hot, or swollen.

*Tr.* at 22.

Plaintiff argues that if the ALJ believed the record was insufficient to ascertain the

basis of Dr. Bomalaski's findings, then he should have made a reasonable effort to get more information from the doctor. Social Security regulations require that a medical source be re-contacted if the information received "is inadequate for us to determine whether you are disabled," *see* 20 C.F.R. § 404.1512(e), or if the record is insufficient to reach a conclusion as to whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c)(3). Here, the ALJ did not find the medical opinions to be unclear or ambiguous, nor did the ALJ believe that the record was inadequate to make a determination as to disability. Rather, the ALJ found Dr. Bomalaski's opinion regarding Plaintiff's ability to stand/walk to be inconsistent with, and unsupported by, the clinical findings and other evidence of record related to the relevant time period. Under these circumstances, I conclude that the ALJ was not required to re-contact Dr. Bomalaski for additional information. *See* 20 C.F.R. §§ 404.1512(e), 1527(c)(2); *see also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981) ("[W]hen the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.").

As for the opinions of Dr. Whalen, I note that Plaintiff had not provided the ALJ with the doctor's treatment notes. As a result, the ALJ accorded Dr. Whalen's assessment "little weight as it is inconsistent with the preponderance of medical evidence of record, not supported by the writer's treatment notes, and the writer offers no explanation as to how or why he has reached such findings." *Tr.* 22. These records were provided to the Appeals Council and show a consistent diagnosis of arthritis, as well as opinions regarding Plaintiff's limitations that are consistent with those found by Dr. Bomalaski. As with Dr. Bomalaski's unsupported conclusion regarding Plaintiff's limited ability to stand/walk during the relevant period, there is no objective evidence in the record to support Dr. Whalen's conclusion to the same effect. Under the circumstances, it was proper for the ALJ to give more weight to the opinion contained in the February 2005 medical consultant's RFC assessment that Plaintiff has no limitation in his ability to sit, stand, or walk. *See* 20 C.F.R. § 404.1527(d) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

However, the ALJ's evaluation of the medical evidence is more problematic in other respects. For example, the ALJ expressly accorded "some weight" to the opinions of Dr. Bomalaski that Plaintiff is moderately limited in his ability to grasp, turn, and to twist objects with his hands, that his fine manipulations are moderately limited, and that he is capable of sitting for prolonged periods and can lift and carry at least ten pounds. *Tr.* at 22. The ALJ found that these opinions, which were essentially repeated by Dr. Whalen, are "fairly consistent with the preponderance of medical evidence of record including Dr. Bomalaski's treatment notes." *Id.*

Nevertheless, the ALJ did not further address the treating physicians' opinions regarding Plaintiff's limited ability to use his hands and to lift and carry, and instead adopted the medical consultant's RFC assessment that Plaintiff could lift and carry at least ten pounds on a frequent basis and twenty pounds on an occasional basis, and had no other hand-related limitations. *Tr.* at 23, 157–58. Therefore, consistent with my decision to remand this matter for further consideration of Plaintiff's hand impairment at step two, I recommend that, upon remand, the ALJ re-assess and clarify the weight given to the opinions of the treating physicians regarding Plaintiff's hand impairment.

## C. *The ALJ's Credibility Determination*

Plaintiff next argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ failed to properly evaluate the Plaintiff's subjective complaints. *See* Pl.'s Br. at 7–8. In particular, Plaintiff focuses on the ALJ's determination that Plaintiff's "testimony was interspersed with exaggerations that were retracted or modified when directly confronted" and was therefore "not entirely credible." *Tr.* 21.

Social Security Regulations require a two-step evaluation of subjective symptoms: (1) a determination as to whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work. 20 C.F.R. § 404.1529(b). Similarly, in accordance with the Social Security Ruling 96–7p, the ALJ is required to consider both the objective evidence of record, as well as Plaintiff's subjective testimony. *See* S.S.R. 97–7p, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements." An ALJ can reject a claimant's subjective testimony if he does not find it credible, but must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding. *See Schaudeck*, 181 F.3d at 433; *see also* S.S.R. 96–7p ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."). Therefore, although a claimant's subjective allegations must be considered, there must also be objective medical evidence of an impairment or combination of impairments which could reasonably cause the symptoms, limitations and functional restrictions alleged. 20 C.F.R. § 404.1529(b)-(c).

The ALJ stated the following regarding Plaintiff's subjective complaints:

> [Plaintiff's] testimony was interspersed with exaggerations that were retracted or modified when directly confronted or modified when directly confronted. Examples would include his admission that he does do household chores, grocery shopping, and no longer drives due to the numerous traffic violations he has accumulated—not because of his arthritis as he originally stated.
>
> After considering the evidence of record, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

*Tr.* at 21.

Plaintiff argues that the ALJ erred when he based his credibility determination, in part, on Plaintiff having lied about the reason he stopped driving. *See* Pl.'s Br. at 7–8. In his application for benefits, Plaintiff reported that he drove only "on rare occasion[s] due to illness," suggesting he stopped driving due to his claimed disability condition of arthritis. *Tr.* at 83. Plaintiff testified at the administrative hearing that he stopped driving due to accumulated traffic violations. *Id.* at 220. It was not unreasonable for the ALJ to conclude that there was an inconsistency between the application and testimony in this regard and to judge Plaintiff's credibility accordingly.

As previously explained, however, I recommend that this case be remanded for further consideration of Plaintiff's hand impairment at step two, and that the ALJ reassess and clarify the weight given to the opinions of the treating physicians re-

garding Plaintiff's hand impairment. Because remand on these bases may result in different assessments and conclusions regarding Plaintiff's hand impairment and related limitations, I do not find it necessary to further address the ALJ's credibility determination at this time.

### D. *The ALJ's RFC Assessment and Reliance on the Grids*

Lastly, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC and in relying on the Grids to conclude that Plaintiff was not disabled. *See* Pl.'s Br. at 9–10. "Residual functional capacity is defined as that which such an individual is still able to do despite the limitations caused by his or her impairments." *Burnett*, 220 F.3d at 121. The RFC assessment is based upon all the relevant evidence of an individual's work-related activities, including his or her medically determinable impairments or combination of impairments, and the impact of any related symptoms. *See* S.S.R. 96–8p, "Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims." Moreover, the ALJ must consider all of the conditions revealed by the record, in combination, regardless of their severity. *See Burnett*, 220 F.3d at 122; 20 C.F.R § 404.1545.

Here, the ALJ determined that Plaintiff could not perform his past relevant work because the work required lifting and carrying work-related supplies weighing in excess of twenty pounds. However, the ALJ gave significant weight to the conclusions of the Commissioner's medical consultant, who found that Plaintiff retained the RFC to lift and carry at least ten pounds on a frequent basis and twenty pounds on an occasional basis, was capable of standing and or walking at least six hours in any eight-hour period, had no restrictions on his ability to sit for prolonged periods and had no manipulative, visual, communicative or environmental type limitations. *Tr.* at 23, 157–58. The ALJ found that Plaintiff's only non-exertional limitations consist of "possible occasional limitation[s] on his ability to engage in prolonged postural activities such as climbing ladders, ramps, ropes, and scaffolds, and prolonged balancing, stooping, kneeling and crouching," and that the additional limitations "have little or no effect on the occupational base of unskilled light work." *Id.* at 24. As a result, the ALJ relied on the Grids in finding that Plaintiff could perform the full range of light work.

The Grids are based solely on exertional limitations, that is, limitations that effect a person's ability to meet the strength demands of jobs. *See Sykes*, 228 F.3d at 270 (stating Grids are to be used when claimant has only strength-related limitations). In contrast, non-exertional limitations include postural limitations, such as bending, stooping and kneeling. 20 C.F.R. § 404.1525(d); *Stunkard v. Secretary of Health and Human Serv.*, 841 F.2d 57, 61 (3d Cir.1988); S.S.R. 85–15, "Capability To Do Other Work—the Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments" ("Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop); or bend both the spine and legs (crouch)."). Thus, it is improper for an ALJ to rely on the Grids where a claimant presents only non-exertional limitations, or a combination of exertional and non-exertional limitations. *See Poulos v. Commissioner of Soc. Sec.*, 474 F.3d 88, 93–94 (3d Cir.2007); *Sykes*, 228 F.3d at 270.

An ALJ's reliance on the Grids is not necessarily problematic where the ALJ finds that some nonexertional limitations exist, but that they are insignificant. *See Caruso v. Commissioner of Soc. Sec.*, 99 Fed.Appx. 376, 381–82 (3d Cir.2004) (af-

firming ALJ decision based on Grids where "there exists some evidence of postural limitations, [but] taken as a whole, the objective medical evidence coupled with ... testimony substantially supports the ALJ's conclusion that any such limitations were not significant"). The ALJ made a similar determination here. *Tr.* at 24 ("[T]he additional limitations have little to no effect on the occupational base of unskilled light work"). However, this analysis may change once the ALJ fully evaluates the impact of Plaintiff's hand impairment. As previously explained, I find that the ALJ erred by failing to find Plaintiff's hand arthritis to be a severe impairment at step two, and that the ALJ must reassess and clarify the weight given to the treating physicians' opinions related to Plaintiff's hand pain and limited grip strength. This is particularly important because Dr. Bomalaski opined that Plaintiff is moderately limited in his ability to grasp, turn and twist objects with his hands, Dr. Whalen opined that Plaintiff had significantly reduced grip strength, and both doctors opined that these limitations were present during the relevant time period. Because these limitations are non-exertional in nature, *see* S.S.R. 85–15, *supra*, reconsideration of Plaintiff's hand impairment on remand may preclude reliance on the Grids and require the ALJ to obtain testimony from a Vocational Expert.

## V. *CONCLUSION*

My review is limited to the administrative record for the period before Plaintiff's last date insured of September 30, 2001. Based on this review, I conclude that the final decision of the Commissioner to deny DIB benefits is not supported by substantial evidence. Specifically, I find that the ALJ erred by failing to find Plaintiff's hand impairment to be a severe condition at step two. Upon remand, the ALJ is instructed to re-assess and clarify the

weight given to the opinions of the treating physicians regarding Plaintiff's hand impairment and, if necessary, obtain testimony from a Vocational Expert regarding the impact of the hand impairment on Plaintiff's occupational base.

Accordingly, I make the following:

### *RECOMMENDATION*

AND NOW, this 27th day of August, 2008, it is RESPECTFULLY RECOMMENDED that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report, Judgment be entered REVERSING the decision of the Commissioner of Social Security for the purposes of this remand only, and the relief sought by Plaintiff be GRANTED to the extent that the matter be REMANDED for further proceedings consistent with this adjudication.

The Parties may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

AND NOW, this ___ day of ___, 2008, upon careful and independent consideration, the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law. Therefore, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED AND ADOPTED;

2. Judgment is entered REVERSING the decision of the Commissioner of Social Security for the purposes of this remand only and the relief sought by Plaintiff is GRANTED to the extent that the matter is REMANDED for further proceedings consistent with this adjudication;

3. The Clerk of Court is hereby directed to mark this case closed.